J-S41040-25
J-S41041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANTHONY DWAYN WATERS, JR. | : | No. 78 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 8, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001703-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANTHONY DWAYN WATERS, JR. | : | |
| | : | |
| Appellant | : | No. 79 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 8, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001703-2023

BEFORE:   BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 23, 2026**

These matters are consolidated cross-appeals filed by Anthony Dwayn

Waters, Jr. ("Defendant"), and the Commonwealth of Pennsylvania from

Defendant's judgment of sentence imposed by the Court of Common Pleas of

Delaware County following a trial at which a jury found Defendant guilty of

_____

[*] Retired Senior Judge assigned to the Superior Court.

involuntary deviate sexual intercourse ("IDSI") by forcible compulsion, sexual assault, and indecent assault without consent.[1]  Defendant, in his appeal, challenges the denial of his motion to strike a prospective juror for cause and raises two claims alleging the improper admission of hearsay.  *See* Defendant's Brief for Appellant, 19-32 (79 EDA 2025).  The Commonwealth, in its appeal, challenges the discretionary aspects of Defendant's sentence, alleging that the trial court imposed a "manifestly unreasonable and excessively lenient sentence."  *See* Commonwealth's Brief for Appellant, 12-22 (78 EDA 2025).  After careful review of both appeals, we affirm the judgment of sentence.

The trial court has summarized the facts for this criminal matter as follows:

> On June 24, 2021, police from [the] Darby Township Police Department we[nt] to Taylor Hospital for a report of a sexual assault arising from a June 22, 2021 criminal episode during which [Defendant] had unlawful involuntary deviate sexual intercourse and unlawful sexual contact with the [v]ictim[, D.B.]  [D.B.] and [Defendant] both worked the overnight shift at Walmart in Glenolden, Delaware County, Pennsylvania.  They became friendly, and exchanged contact information, and would meet to go on smoke breaks and talk.  Approximately one week before the sexual assault, [D.B.] and [Defendant] went on a break together and began kissing, and [Defendant] tried to take it further.  He pulled out his penis, and [D.B.] told him [that] she did not want to have sex with him, but she could use her hand to satisfy him.  [Defendant] said no.  The break was ending, and the two of them went back to work.

_____

[1] 18 Pa.C.S. §§ 3123(a)(1), 3124.1, and 3126(a)(1), respectively.

- 2 -

On June 22, 2021, [D.B.] and [Defendant] again agreed to meet for their break. On this day, [Defendant] suggested the two of them walk to the loading dock behind[, another store,] Forman Mills. [Defendant] and [D.B.] began kissing, and he again tried to take it further. [D.B.] offered to satisfy him using her hand. [Defendant] then turned her over, bent her down, and placed his mouth on her vagina and private area, and then he attempted to insert his penis in her vagina; when this was not working, he did insert his penis into her anus. The assault ended when a truck drove toward the loading dock. The two of them walked back to work.

Trial Court Opinion, 4/22/25, 1-2 (section break added).

Defendant proceeded to a jury trial that commenced on May 7, 2024. The Commonwealth presented testimony from the following witnesses: D.B.; D.B.'s mother, A.B.; Police Officer Nicholas Pascale (the officer who was dispatched to Taylor Hospital on June 24, 2021); Sergeant Kenneth Bellis (the officer who obtained D.B.'s cellular phone for a data extraction and reviewed a resulting forensic analysis report and the data and text messages recovered from the phone); and Nurse Christine Belfiglio (a sexual assault nurse examiner ("SANE") who conducted a forensic exam of D.B. and collected swabs of specimens from her for a rape kit). Defendant presented testimony from his mother, Lorette Green-Roberts, as a character witness for his reputation as a peaceful person. Counsel stipulated that, *inter alia*, there was no autosomal DNA profiling analysis conducted in this case because an insufficient amount of male DNA was detected on the analyzed rape kit swabs. *See* N.T. Trial, 5/8/24 (Vol. 1), 30-31.

On May 9, 2024, the jury found Defendant guilty of the above-referenced offenses and found him not guilty of rape by forcible compulsion

and indecent assault by forcible compulsion.[2]  *See* Verdict Sheet, 5/9/24, 1-2; N.T. Trial, 5/9/24, 3-4.  On August 8, 2024, the trial court sentenced Defendant to concurrent terms of one to two years' imprisonment, to be followed by five years' probation, for IDSI by forcible compulsion and sexual assault; indecent assault without consent merged for sentencing purposes.[3]  *See* Sentencing Order, 8/8/24, 1; N.T. Sentencing Hearing, 8/8/24, 32.  Defendant was subject to a mandatory three-year probation term pursuant to 42 Pa.C.S. § 9718.5(a).  *See* N.T. Sentencing Hearing, 8/8/24, 32-33.  In addition, Defendant was subject to lifetime sexual offender registration requirements pursuant to Subchapter H of the Sexual Offender Registration

---

[2] 18 Pa.C.S. §§ 3121(a)(1) and 3126(a)(2), respectively.

[3] The imprisonment term for IDSI was below the mitigated range recommended by the Sentencing Guidelines: 48 to 66 months' imprisonment, plus or minus twelve months imprisonment for aggravating or mitigating circumstances.  *See* IDSI Guideline Sentence Form, 8/9/24, 1; N.T. Sentencing Hearing, 8/8/24, 19 (Commonwealth referencing that Defendant had "no prior record"); *see also* 204 Pa. Code § 303.15 (7th ed., amend 6) (offense listing setting an offensive gravity score of twelve for IDSI under Section 3123(a)(1)); 204 Pa. Code § 303.16(a) (7th ed., amend 6) (applicable basic sentencing matrix).  The imprisonment term for sexual assault was below the mitigated range recommended by the Sentencing Guidelines: 36 to 54 months' imprisonment, plus or minus twelve months of imprisonment for aggravating or mitigating circumstances.  *See* Sexual Assault Guideline Sentencing Form, 8/9/24, 1; *see also* 204 Pa. Code § 303.15 (7th ed., amend 6) (offense listing setting an offensive gravity score of eleven for sexual assault under sexual assault under Section 3124.1); 204 Pa. Code § 303.16(a) (7th ed., amend 6).

Prior to trial, Defendant declined offers for a negotiated guilty plea to sexual assault with a sentencing recommendation of three to six years' imprisonment or an open guilty plea to sexual assault.  *See* N.T. Trial, 5/6/24, 6-8.

and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.42. *See* 42 Pa.C.S. § 9799.14(d)(4) (designating IDSI as a Tier III sexual offense); 42 Pa.C.S. § 9799.15(a)(3) (requiring Tier III offenders to register for life).

Defendant and the Commonwealth both timely filed post-sentence motions. Defendant challenged the sufficiency of the evidence in his motion. *See* Defendant's Post-Sentence Motion, 8/16/24, 1-3. The Commonwealth requested modification and reconsideration of sentence in its motion.[4] *See* Commonwealth's Post-Sentence Motion, 8/15/24, 1-4. The parties each filed

---

[4] Relevant to the Commonwealth's appeal, it asserted in its post-sentence motion that: (1) the sentencing court "unreasonably deviated" from the Sentencing Guideline's recommended range for IDSI, *see* Commonwealth's Post-Sentence Motion, 8/12/24, ¶ 7-8, 10; (2) no mitigating factors were presented to justify a mitigated range sentence, let alone a sentence with a downward departure from the Sentencing Guidelines' recommended ranges, *see id.* at ¶ 9; (3) the court's emphasis on Defendant's lack of a criminal record was a form of improper double counting of a factor already considered by the Sentencing Guidelines, *see id.* at ¶ 11; (4) the sentencing court's statements, justifying the imposed term, "ran completely contrary to the findings of fact made by the [j]ury," *id.* at ¶ 12; (5) the court's statements indicating that Defendant was unsure of the victim's lack of consent were explicitly rejected by the jury's verdict, *see id.* at ¶ 14; (6) the sentencing court "demonstrated bias," *id.* at ¶ 15; (7) the court's sentence "completely ignore[d] and invalidate[d] that rape and sexual assault is not something that occurs just among strangers, but among acquaintances and people who may have relationships of some degree with each other," *id.* at ¶ 18; (8) the court's repeated references to the facts of the case as "unusual," "bizarre," and "different," "ignored the reality that sexual assault and rape occur among people who have some sort of pre-existing relationship with each other every day," *id.* at ¶ 19; (9) the court's statement that the Sentencing Commission did not contemplate "the fact scenario" of the case was "inaccurate and incorrect," *id.* at ¶ 20; (10) the court emphasized Defendant's "great working history," but the "attack happened while [] Defendant was at work [and it was committed] against another coworker of his," *id.* at ¶ 21; and (11) the imposed sentence "fail[ed] to adequately protect the public," *id.* at ¶ 22.

responses to the other party's post-sentence motion. *See* Defendant's Response to Commonwealth's Post-Sentence Motion, 8/21/24, 1-3; Commonwealth's Response to Defendant's Post-Sentence Motion, 8/23/24, 1-10. After a hearing on August 29, 2024, the trial court deferred a ruling on the post-sentence motions for the preparation of trial transcripts and the possibility of the parties filing supplemental briefs. *See* N.T. Post-Sentence Motions Hearing, 8/29/24, 22. After the Commonwealth filed a supplemental memorandum of law, the court denied both parties' motions on November 7, 2024. *See* Commonwealth's Memorandum of Law, 9/27/24, 1-28; Order (post-sentence motions denial), 11/7/24, 1.

Both parties timely filed notices of appeal. *See* Commonwealth's Notice of Appeal, 12/6/24, 1; Defendant's Notice of Appeal, 12/6/24, 1. Both parties and the trial court satisfied their obligations under Pennsylvania Rule of Appellate Procedure 1925. *See* Rule 1925(b) Statement, 1/8/25, 1; Defendant's Petition for an Extension of Time to File Rule 1925(b) Statement, 1/14/25, 1-2; Order (granting Defendant's extension petition), 1/22/25, 1; Commonwealth's Rule 1925(b) Statement, 1/29/25, 1-2; Defendant's Rule 1925(b) Statement, 2/18/25, 1-3; Trial Court Opinion, 4/22/25, 1-62. On February 24, 2025, the parties filed a written stipulation agreeing to correct the trial jury panel list. *See* Parties' Stipulation to Correct Jury Panel List, 2/24/25, 1-3. On October 31, 2025, this Court *sua sponte* consolidated the instant appeals. *See* Superior Court Order (consolidation of appeals), 10/31/25, 1 (78-79 EDA 2025); Pa.R.A.P. 513.

## Appeal Number 79 EDA 2025

Defendant presents the following questions for our review:

I.   Whether the trial court erred in denying [Defendant's] motion to strike for cause Panelist #37 since that prospective juror could not be fair and impartial?

II.  Whether the trial court erred in admitting portions of Exhibit C14 (nurse's "sexual assault packet")[,] containing the complainant's narrative accusing [Defendant] of misconduct, because that section of the report and related testimony is hearsay and that is not within the medical diagnosis or treatment exception, and no other hearsay exceptions applied?

III. Whether the trial court erred when it permitted a police officer and the complainant's mother to testify about the complainant's out-of-court statements describing her version of [the] events, as the statements are not excited utterances, and no other exceptions to the rule against hearsay applied?

Defendant's Brief for Appellant, 5.

We will begin by addressing Defendant's appeal, as a grant of relief on any of his claims could necessitate a vacation of the judgement of sentence and the ordering of a new trial that would render moot the Commonwealth's discretionary sentencing claim. *See Commonwealth v. Ingber*, 531 A.2d 1101, 1102 (Pa. 1987) ("a new trial must be awarded" if the refusal of a defense challenge for cause to a venireperson was erroneous); *Commonwealth v. Peterkin*, 513 A.2d 373, 376 n.6 (Pa. 1986) ("Errors of admission raise independent issues and may for constitutional or other reasons require a new trial[.]").

In his first issue, Defendant asserts that his convictions are "the product of a flawed jury selection process" and the trial court erred by denying his motion to strike prospective jury panelist #37 ("Panelist 37") for cause. **See** Defendant's Brief for Appellant, 6, 19-24. Panelist 37 was never seated in the jury panel which ultimately sat for the trial, but Appellant alleges that the court's improper rejection of his motion to strike that panelist for cause constituted an abuse of discretion where it caused him to exercise a peremptory challenge that could have been used on a different panelist where he otherwise exhausted all of his peremptory challenges before the jury was selected. **See id.** at 21-24.

We review the instant claim cognizant that

[a] criminal defendant's right to an impartial jury is explicitly guaranteed by Article I, section 9 of the Pennsylvania Constitution, Pa. Const. Art. I, § 9. The jury selection process is crucial to the preservation of that right. The relevant principles governing the examination of veniremen to assess their impartiality are set forth in [our Supreme] Court's decision in **Commonwealth v. Drew**, [] 459 A.2d 318 ([Pa.] 1983):

It must be remembered the purpose of the *voir dire* examination is to provide an opportunity to assess the qualifications of prospective jurors to serve. [**See**] **Commonwealth v. Johnson**, [] 305 A.2d 5 ([Pa.] 1973); **Commonwealth v. Lopinson**, [] 234 A.2d 552 ([Pa.] 1967), **vacated and remanded** 392 U.S. 647 [], **appeal after remand**, [] 296 A.2d 524, **cert. denied**, 411 U.S. 986 [] (1973); **Commonwealth v. McGrew**, [] 100 A.2d 467 ([Pa.] 1953). It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification. [**See**] **Johnson**, **supra**; **Commonwealth v. Swanson**, [] 248 A.2d 12 ([Pa.] 1968), **cert. denied**[,] 394 U.S. 949 [] (1969); []

> *Lopinson*, *supra*; [] *McGrew*, *supra*. Thus[,] the inquiry must be directed at ascertaining whether the venireperson is competent and capable of rendering a fair, impartial[,] and unbiased verdict. [*See*] *Johnson*, *supra*; [] *Lopinson*, *supra*; [] *McGrew*, *supra*. The law also recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs, conceptions[,] and views. The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court. [*See*] *Commonwealth v. England*, [] 375 A.2d 1292 ([Pa.] 1977); [] *Johnson*, *supra*.

[*Drew*,] 459 A.2d at 320.

> A challenge for cause to service by a prospective juror should be sustained and that juror excused where that juror demonstrates through his conduct and answers a likelihood of prejudice. [*See*] *Commonwealth v. Colson*, [] 490 A.2d 822 ([Pa.] 1985). The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion. [*See*] *Colson*, *supra*; *Commonwealth v. Bighum*, [] 307 A.2d 255 ([Pa.] 1973); *Commonwealth v. ex rel. Fletcher v. Cavell*, [] 149 A.2d 434 ([Pa.] 1959); *Commonwealth v. Pasco*, [] 2 A.2d 736 ([Pa.] 1938); *Commonwealth v. Gelfi*, [] 128 A. 77 ([Pa.] 1925).

*Ingber*, 531 A.2d at 1102-03.

During the initial questions posed to the venire, Panelist 37 answered in the affirmative that he would "believe the testimony of a police officer merely because he or she is a police officer, more than any other witness." N.T. Trial, 5/6/24 (Vol. 2), 15. He also answered in the affirmative that "the nature of the charges themselves … would prevent [him] from being a fair and impartial juror." *Id.* at 17.

The court later subjected Panelist 37 to individual *voir dire* examination regarding his response about the nature of the charges affecting his ability to be a fair and impartial juror. **See** N.T. Trial, 5/6/24 (Vol. 2), 81-84. Panelist 37 stated that he would "do [his] best based on the facts" but his concern was that the charges would mean that the jury would be "calling somebody a liar," a process that he referred to as an "internal struggle." **Id.** at 82. Upon further questioning about the task of the jury in those respects, Panelist 37 indicated that he thought that he could be "fair and impartial" in this case:

> THE COURT: So[,] all[] we're going to ask you to do really is listen to the testimony of all the witnesses and make an evaluation and I'm sure that in your life -- and you're in sales, right?
>
> [PANELIST 37]: Correct.
>
> THE COURT: You have to deal with people all the time and you have to evaluate them, kind of figure them out a little bit, and that's what we're asking you to do when they're on the stand, all right. You've got to pick through the nonsense and kind of find out where the facts are.
>
> [PANELIST 37]: Understand.
>
> THE COURT: Do you think you could be fair and impartial in this case?
>
> [PANELIST 37]: Then yes.

**Id.**

The court also questioned Panelist 37 about his ability to follow an instruction that the jury could not take an adverse inference from a defendant's choice not to testify:

THE COURT: You said in the beginning that you have [to] say that someone is a liar, the judge will instruct you in a little bit that the defendant does not have to testify and if he doesn't testify would you infer anything from that?

[PANELIST 37]: I, you know, that would be in the back of my mind, yes. Especially…

THE COURT: One of the jury instructions, I had mentioned this out there, is that you can't infer the negative by a person not testifying, constitutional rights, we all live by them, we all love to have them. We're all innocent unless proven, and that word proven is on the Commonwealth not the defense, so they have to pro[ve] the person guilty. You can't say that I did something and then expect me to explain what I didn't do, it's really hard to prove a negative, so that's why we have that rule. So, I would instruct you as a juror that you cannot infer anything negative on a person not testifying or presenting any evidence. If the Commonwealth proved their case[,] so be it, if they didn't prove their case[,] so be it, we don't -- that's the way the chips fall.

[PROSECUTOR]: And are you okay following that instruction?

[PANELIST 37]: All right.

[PROSECUTOR]: Nothing further, thank you.

N.T. Trial, 5/6/24 (Vol. 2), 83-84. The defense made a motion to strike Panelist 37 that the Commonwealth opposed. *See id.* at 84 (Defendant's counsel: "I'm going to make a motion but I, I mean I know where he was going -- for the record I motion to strike." THE COURT: "All right." PROSECUTOR: "And I would be opposed to it"). The motion to strike for cause was rejected and Defendant's counsel used a peremptory strike on Panelist 37. *See* Order (Correction of Jury Panel List), 2/25/25, 1.

Defendant alleges that the above-reproduced portions of the record reflect that the trial court erred by rejecting his motion to strike for cause

- 11 -

because Panelist 37 "was more likely to believe police testimony, wavered about his ability to assess witness credibility, expressed concerns that the nature of the charges would impact his fair evaluation of the case, and suggested that he would improperly consider a defendant's invocation of his right to not testify." Defendant's Brief for Appellant, 19. Defendant argues that Panelist 37 was unsuitable to serve as a juror and that he "never made adequate assurances that he could be fair" and impartial in that role. *Id.* at 20-22. Defendant asserts that a "fundamental jury selection error" with regard to this panelist improperly forced him to squander one of his exhausted peremptory challenges. *See id.* at 23-24.

The trial court advises us that its denial of the motion to strike for cause was proper:

> The record in the case supports this court's denial of [Defendant's] challenge for cause and demonstrated the denial was not improper. The May 6, 2024 [n]otes of [t]estimony are clear [that Panelist 37] indicated during *voir dire* [that] the nature of the charges in the case might affect his ability to be fair and impartial. He stated he would try to be fair and impartial. When questioned by the court, and the attorney for the Commonwealth, [Panelist 37] did not equivocate in his answers to the court and clearly stated [that] he could be fair and impartial in this case and he would follow the court's instructions.
>
> [Defendant] raised a challenge for cause to [Panelist 37] and moved to strike the juror. Based on the exchange, this court concluded [that Panelist 37] could and would follow the court's instructions and evaluate the facts and evidence in the case, and be a fair juror. This court's ruling did not result in the seating of a juror who should have been dismissed for cause. The fact this case is of a sensitive nature did not render prospective juror[, Panelist 37,] incompetent to serve, especially when he credibly asserted he would weigh the evidence and the believability of the

of the testimony. Additionally, even though [Defendant] had the opportunity to question [Panelist 37] concerning his particular biases, [Defendant] did not pose any questions to the prospective juror. This court did not restrict the scope of the *voir dire* of [Panelist 37] and[,] without more development concerning the prospective juror's potential biases[,] this court did not find any reason to grant the challenge for cause. Admittedly, [Panelist 37] stated it might be somewhat challenging but he admitted he would do his best to be fair and impartial and follow the court's instructions and he definitely did not express a fixed or definite opinion concerning [Defendant's] guilt or any predisposition concerning the case generally. [Panelist 37] was not in this court's view demonstrating he would be incompetent as a juror.

Trial Court Opinion, 4/22/25, 42-43 (record citations omitted).

To prove that the denial of the motion to strike Panelist 37 was an abuse of discretion, Appellant primarily compares the instant matter to our prior decisions in ***Commonwealth v. Penn***, 132 A.3d 498 (Pa. Super. 2016), and ***Commonwealth v. Johnson***, 445 A.2d 509 (Pa. Super. 1982). ***See*** Defendant's Brief for Appellant, 20-22. In ***Penn***, the prospective panelist initially indicated that she, or someone close to her, worked in law enforcement or the justice system, and that she would be more likely to believe the testimony of a police officer or law enforcement officer. ***See Penn***, 132 A.3d at 500. In individual *voir dire*, the prospective panelist identified that she worked in a security officer position, had previously worked in police departments, and that her boyfriend was a police officer. ***See id.*** When asked if she could be fair and impartial, she responded, "I would think so, yes." ***Id.*** Despite that assertion, the prospective panelist admitted that it would be hard for her to not believe police officers or law enforcement officers because of

her experience and that she would be inclined to believe them.  ***See id.*** at 501.

In ***Johnson***, a prospective panelist in a robbery matter indicated that his daughter had been the victim of a rape and robbery that possessed several important similarities with the facts in the case at bar.  ***See Johnson***, 445 A.2d at 512.  When asked if he could be fair as a juror, the prospective panelist said that he thought it would be difficult because of the way he was reacting emotionally to the facts presented as they related to something that had happened to his daughter.  ***Id.***  Although he eventually assured the court that he could be fair, we observed that the assurance did not dispel the force of his prior candid admission about his reactions to the nature of the case presented:

> [The prospective juror] vividly demonstrated during *voir dire* that he would be likely not to be an impartial juror.  He not only visibly manifested emotional distress but specifically expressed substantial doubts about his ability to be impartial at least five times.  Although he acknowledged that "logically" he could separate the robbery and rape of his daughter from the robbery of appellant's victims, he added at once that "emotionally, I can see that I don't have full control."

***Id.*** at 514.

Our reversals of the denials of motions to strike the prospective panelists in ***Penn*** and ***Johnson*** can easily be distinguished from the instant matter.  Unlike in ***Penn***, the parties did not elicit information from Panelist 37 demonstrating that his ability to perform the duties of a juror was clouded by prior experience in law enforcement or extensive close ties to people in law

- 14 -

enforcement. Unlike in **Johnson**, the record did not reflect that any statement of potential bias on the part of Panelist 37 was the result of a consequential life experience involving a similar crime committed against a close family member. Thus, any putative bias of Panelist 37 in favor of police witnesses or about the nature of the crimes did not rest "on a firm bedrock" as did that of the prospective jurors in **Penn** and **Johnson**. **Penn**, 132 A.3d at 505. Moreover, unlike in **Penn**, Panelist 37 did not immediately equivocate on his ability to serve as a juror after giving his assurance that he could be a fair and impartial juror in the instant case.

With the record before us, we are unable to conclude that the denial of Defendant's motion to strike Panelist 37 constituted an abuse of discretion. The trial court here was in the best position to assess the credibility of Panelist 37's statement that he could be a fair and impartial juror, **see** N.T. Trial, 5/6/24 (Vol. 2), 82, and the record supports the trial court's finding that there was no equivocation on the part of Panelist 37 that he could be fair. **See** Trial Court Opinion, 4/22/25, 42. Taking into consideration that, at the time of the individual *voir dire* of Panelist 37, Defendant's counsel made no efforts to interject with questions aimed at the prospective panelist's ability to serve as a juror, we conclude that the trial court adequately investigated the juror's potential bias in its own questioning and reasonably concluded that there was

an absence of grounds for striking the panelist for cause.[5]  **See**

**Commonwealth v. Weiss**, 776 A.2d 958, 966 (Pa. 2001) (trial court may

properly refuse to excuse a juror for cause when the trial court believes that

the juror would be fair and impartial).

In his second issue, Defendant asserts that the trial court abused its

discretion by admitting portions of the "sexual assault packet" containing

"narrative" from D.B. to Nurse Belfiglio.  **See** Defendant's Brief for Appellant,

25-28.  He asserts that no hearsay exception applied to permit the admission

of this narrative, the statements implicating him were "unrelated to medical

treatment and unnecessary for [D.B.'s] care," and the admission of these

statements denied him a fair trial.  **Id.** at 25.  The statements at issue, based

on Defendant's argument, appear to concern D.B. recounting the events of

the abuse and her identification of Defendant as the perpetrator of that abuse.

**See id.** at 25 ("The complainant in this case told a sexual assault nurse about

accusations against a coworker, and the prosecution offered that evidence to

prove its assertions.").

_____

[5] To the extent that Defendant implies that the trial court employed an inadequate scope in its questioning of Panelist 37 in the individual *voir dire*, **see** Defendant's Brief for Appellant, 21 ("the panelist was inclined to trust law enforcement over other witnesses, and neither the trial court nor the prosecutor made any attempts to rehabilitate him on this issue"), Defendant waived any claim to that effect when he raised no contemporaneous objection at the time of *voir dire*.  **See Commonwealth v. Doe**, 462 A.2d 762, 765 (Pa. Super. 1983) (Doe waived her issue concerning the adequacy of the scope of *voir dire* when no specific objection was made at the time of the *voir dire*).

The Commonwealth maintains that the statements at issue were admissible pursuant to the hearsay exception under Pennsylvania Rule of Evidence 803(4), which applies to statements for purposes of medical diagnosis or treatment. *See* Commonwealth's Brief for Appellee, 15-16. Assuming *arguendo* that the narrative portions of the SANE packet were improperly admitted, the Commonwealth argues that any error in those respects was harmless because the information contained in the narrative was cumulative of the victim's own testimony and the text messages exchanged between D.B. and Defendant. *See id.* at 17-19.

When the trial court overruled Defendant's objection to the admission of the packet, the court asked for a limitation on the potential use of the packet as follows: "The document would be admitted -- [as] discussed. I'd ask that it be limited to the relevant parts for purposes of the SANE nurse['s] performance of her duties." N.T. Trial, 5/8/24, 10. The trial court advises us that this limitation, in addition to the fact that the information in the packet tracked D.B.'s testimony, meant that the admission of the packet was proper:

> The statements were not offered for the truth of the matter asserted; they were not obtained only for the purpose of trial; they were obtained by Witness Belfiglio so she would know where to obtain DNA evidence and look for injury. Additionally[,] they are consistent with, cumulative to, and corroborative of [D.B.'s] testimony.

Trial Court Opinion, 4/22/25, 51. Like the Commonwealth, the trial court asserts that, in the event we conclude that the narrative portions of the packet were improperly admitted, the admission merely constituted harmless error:

> Even if the Superior Court disagrees, and determines this court did commit error, the error is harmless in view of the additional corroborative testimony, including [Defendant's] own statements demonstrated in the te[x]t messages. … [Defendant's] claim does not merit relief because, even if the testimony was hearsay, any error in the admission of the testimony was harmless. Here, as noted above, prior to [the testimony of D.B.'s mother], the victim testified without objection concerning the sexual assault. The admission of Exhibit C14[,] to the extent it included any testimonial hearsay regarding [Defendant's] identity[, it] was wholly cumulative of [D.B.'s] prior testimony. As a result, even if this court erred in allowing the admission of Exhibit C14 regarding [D.B.'s] report of the sexual assault and [her] identification of [Defendant], the error was harmless.

*Id.* at 52.

As a preliminary matter, we must address whether the admission of the narrative portions of the SANE packet constituted error. The standard of review of a trial court's admission of evidence is as follows:

> The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but is rather the overriding or misapplication of law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record.

*Commonwealth v. Ganjeh*, 300 A.3d 1082, 1091 (Pa. Super. 2023) (citations, internal quotation marks, and brackets omitted).

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact." *Commonwealth v. Gross*, 241 A.3d 413, 418 (Pa. Super. 2020) (citation

- 18 -

and internal quotation marks omitted). Hearsay is a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Pennsylvania's Rules of Evidence provide that "[h]earsay is not admissible except as provided by [our Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

One exception to the rule against hearsay, asserted by the Commonwealth, applies to a:

> **(4) Statement Made for Medical Diagnosis or Treatment.** A statement that:
>
>> (A) is made for--and is reasonably pertinent to--medical treatment or diagnosis in contemplation of treatment; and
>>
>> (B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4); *see also Commonwealth v. Smith*, 681 A.2d 1288, 1291-92 (Pa. 1996) ("[T]he declarant must make the statement for the purpose of receiving medical treatment" and "the statement [must] be pertinent to medical treatment.") (footnote omitted).

In *Smith*, on which Defendant relies, *see* Defendant's Brief for Appellant, 26-27, our Supreme Court addressed whether testimony by a nurse wherein she repeated a statement made to her by an injured child identifying

- 19 -

the child's alleged abuser was inadmissible hearsay or whether such testimony was properly admitted under the medical treatment exception to the hearsay rule. A majority of the **Smith** Court concluded that the testimony was hearsay and the medical treatment exception did not apply to the identification of the abuser where it was not "pertinent" to the injured child's treatment. **Smith**, 681 A.2d at 1292 ("We fail to see how the identity of the physical abuser was pertinent to the treatment of [the injured child's] scalding burns. What difference would it have made to the treatment of the burns whether a total stranger inflicted the burns or a close family relative?").

The **Smith** majority also rejected the assertion that the identity of an abuser was "of significance for psychological and emotional treatment of the victim" as it concluded that "[p]rotection from future abuse … does not constitute medical treatment or diagnosis." **Id.** at 1292. The majority concluded that admission of "everything said by the patient in the context of being questioned for the purposes of psychological and treatment and diagnosis" would render the "pertinent to medical treatment" requirement of the Rule 803(4) hearsay exception "meaningless as a standard for judicial analysis." **Smith**, 681 A.2d at 1292-93. From **Smith**, we can extrapolate that the identification of D.B.'s assailant in the "sexual assault packet" would not have been admissible under the medical treatment or diagnosis hearsay exception. **See** Pa.R.E. 803, *Comment* ("Statements as to causation may be admissible, but statements as to fault of the person inflicting harm have been held to be inadmissible.") (citing **Smith**); **see also Commonwealth v.**

***D.J.A.***, 800 A.2d 965, 977-78 (Pa. Super. 2002) (*en banc*) (declining to distinguish ***Smith*** in a case involving sexual abuse of a child: "While sexual abuse carries with it the danger of contracting a sexually transmitted disease, a child's statement identifying the perpetrator cannot obviate that danger, nor can such a statement, standing alone, determine whether the child should be tested and/or treated for a sexually transmitted disease.").

We agree with Appellant that the victim's identifications of him in the "sexual assault packet" were inadmissible. To the extent that his claim encompasses additional aspects of the narrative portions of the SANE packet, his argument appears to be limited to the following single-sentence assertion: "Moreover, the portions of the nurse's testimony and sexual assault packet (Exhibit C14), which merely regurgitated the complainant's story, did not describe pain, physical symptoms, or any other medical symptoms." Appellant's Brief, 28 (citing N.T. Trial, 5/8/24 (Vol. 1), 13). This lone assertion about the remaining portions of the packet is insufficient to demonstrate an entitlement to relief on the basis of the admission of impermissible hearsay. The page of trial notes of testimony referred to within Defendant's single-sentence assertion quotes a narrative section of the packet but, in addition to referring to D.B.'s assailant as a coworker, it describes the extent of the alleged abuse, referring to attempted sodomization, possible digital penetration of D.B.'s vagina, and anal penetration with a possible ejaculation. ***See*** N.T. Trial, 5/8/24 (Vol. 1), 13. Appellant's single-sentence assertion about this testimony asserts a lack of "pain, physical symptoms, or any other

medical symptoms," Appellant's Brief, 28, but overlooks that the information was pertinent to medical treatment and therefore would reasonably fit within the Rule 803(4) hearsay exception.

While Nurse Belfiglio testified that, as a SANE examiner, her "main purpose [wa]s to document any injuries that are found on the patient's body and to collect any sort of evidence," *see* N.T. Trial, 5/8/24 (Vol. 1), 5, her testimony demonstrated that her examination of D.B. was also part of a medical treatment process. She explained, "I offer treatment options for the victims and then I give my recommendations to [the] physician[,] and they consult with the patient and the primary nurse taking care of the patient will administer the treatment options." *Id.* at 6. General descriptions of the scope of the non-consensual contact for which D.B. experienced, as addressed in the narrative section cited by Defendant, would be pertinent to medical treatment because it would set the bounds for the nurse's physical examination of D.B. and thereby comply with the requirements for the Rule 803(4) exception because, as the nurse testified, it would "guide[ her] in the exam." N.T. Trial, 5/8/24 (Vol. 1), 18.

Accordingly, we are not persuaded that the narrative portions of the SANE packet were entirely inadmissible, but we agree with Defendant that no hearsay exception definitively applied to D.B.'s references to Defendant's identity in the narrative portions. At the same time, however, Defendant's name was not specifically identified when D.B.'s first-hand narrative from the packet was read to the jury. The nurse simply referred to the "assailant" as

"a coworker who goes by the name of quote and unquote," N.T. Trial, 5/8/24 (Vol. 1), 18, however, the court granted the Commonwealth permission to "publish" the exhibit to the jury. *See id.* at 8. While the court asked that the admission of the packet would be "limited to the relevant parts for the purposes of the SANE nurs[es's] performance of her duties," *id.* at 10, no instructions were given to the jury as to the inclusion of references to Defendant's identity in the packet or whether they were only to consider the packet for a limited purpose other than the truth of the matters asserted herein. In that sense, the publishing of the packet to the jury constituted error.

As the trial court and the Commonwealth allude to in their analysis for this Court, an abuse of discretion with respect to the improper admission of hearsay is subject to harmless error review. *See Commonwealth v. Copenhaver*, 316 A.3d 1020, 1025-26 (Pa. Super. 2024) (finding trial court's error in admitting videotaped statements made by victim's sister, which were inadmissible under the tender years exception to hearsay, was harmless error).

> It is well established that an error is harmless only if we are convinced beyond a reasonable doubt that there is no reasonable possibility the error could have contributed to the verdict. The Commonwealth bears the burden of establishing the harmlessness of the error. This burden is satisfied when the Commonwealth is able to show that: (1) the error did not prejudice the defendant or the prejudice was [*de minimis*]; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted

> evidence of guilt was so overwhelming and the prejudicial [e]ffect of the error so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Green***, 76 A.3d 575, 582 (Pa. Super. 2013) (citation omitted).

Here, we conclude that any admission of the narrative portions of the SANE packet was harmless error because D.B. testified at trial and the narrative portions of the packet were merely cumulative of D.B.'s substantially similar and untainted testimony describing the sexual assault incident in question and identifying Defendant as the person who engaged in the sexual contact with her without her consent. Moreover, the information in the narrative sections was not presented to the jury as though they were confirmed or endorsed in any fashion by Nurse Belfiglio. The nurse made clear that the information included in the narrative sections of the packet were "the victim's statements" that the nurse wrote out "in her words." N.T. Trial, 5/8/24 (Vol. 1), 12. As the narrative sections were merely cumulative of D.B.'s trial testimony, we find that Defendant is entitled to no relief based on an erroneous admission concerning the SANE packet. ***See Commonwealth v. Fluelling***, 2025 WL 1076121, *3 (Pa. Super., filed Apr. 7, 2025) (unpublished memorandum cited for persuasive value pursuant to Pa.R.A.P. 126(b)) (admission of hearsay statement from child victim identifying her sexual abuser through the testimony of a hospital social worker who heard the child's disclosure "was wholly cumulative" of the victim's testimony and thereby "any error was harmless"), ***appeal denied***, 345 A.3d 1198 (Pa.

2025); **Commonwealth v. Steele**, 2020 WL 4920008, \*4-5 (Pa. Super., filed Aug. 21, 2020) (unpublished memorandum cited for persuasive value pursuant to Pa.R.A.P. 126(b)) (same result with respect to a physician assistant's testimony about a child victim's identification of a perpetrator of sexual abuse during a medical examination where, *inter alia*, the victim's mother testified to the child victim's separate identification of Steele as a perpetrator and Steele did not object to that testimony and "the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence").

In his third issue, Defendant asserts that the trial court erred when it permitted D.B.'s mother and Police Officer Pascale to testify to hearsay statements of D.B. pursuant to the excited utterance hearsay exception. **See** Defendant's Brief for Appellant, 29-32. He argues that D.B.'s statements to her mother, two days after the sexual assault incident, and to the police officer thereafter, lacked "the necessary level of spontaneity" to qualify as excited utterances because D.B. had an "ample opportunity to reflect upon the encounter." **Id.** at 31. In the absence of an alternate applicable hearsay exception, he maintains that the repeated statements of D.B. were erroneously admitted and there was a reasonable possibility that the admission of those statements, "separately and combined," factored into the verdict as they "improperly bolstered the complainant's testimony." **See id.** at 32.

The Commonwealth argues that the statements of D.B. repeated by Officer Pascale did not qualify as hearsay as they were not being admitted "to prove the truth of the matter asserted." Commonwealth's Brief for Appellee, 19-20. Instead, the Commonwealth alleges that the statements were offered "to explain the course of conduct undertaken by an investigating police officer." *Id.* at 20. As to D.B.'s statements repeated by her mother, the Commonwealth asserts that evidence also was "not offered for the truth of the matter." *Id.* at 21. It suggests that the statement was offered to demonstrate what the mother "did as a result of hearing the information," *i.e.*, helping to bag potential evidence, going to the hospital with D.B., and "meeting with the nurses and police." *Id.* In any event, the Commonwealth argues that, if hearsay was improperly admitted through D.B.'s mother and Officer Pascale, it was harmless error because it "was merely cumulative of untainted, properly admitted[,] and similar testimony provided by the victim" and was otherwise "*de minimis* at best." *Id.* at 22.

The instant evidentiary claim is reviewed under an abuse of discretion standard and is subject to harmless error review. *See Commonwealth v. Jacoby*, 170 A.3d 1065, 1090 (Pa. 2017) ("[a]ppellate courts review evidentiary decisions for an abuse of discretion"); *Commonwealth v. Stallworth*, 781 A.2d 110, 120 (Pa. 2001) ("we decline to determine whether or not the victim's statement was properly admitted as an excited utterance since we hold that even if the court erred in admitting the statement, any such error was harmless"). Though Defendant has chosen to jointly argue two

different evidence admission claims in this issue, we will address them separately, starting with the claim addressing Officer Pascale's testimony.

The trial court advises us that D.B.'s statements repeated by Officer Pascale were not hearsay because they were not offered for the truth of the matter asserted therein and, if erroneously admitted, the statements were harmless:

> The record shows [that Defendant] made a hearsay objection to the introduction of Officer Pascale's testimony concerning the statement [D.B.] made to him at the hospital. This court overruled the objection and permitted Officer Pascale to continue testifying. A close review of the record demonstrates [that D.B.] "relayed that a sexual assault had occurred with a coworker at the Walmart two nights prior during her overnight shift." [D.B.] told him she worked overnight. [Defendant] objected again. The Commonwealth argued this already was overruled and requested a sidebar conference. During the sidebar [conference], the Commonwealth indicated "the foundation for this testimony already was laid and this is not her recorded statement with Detective Fynes but a statement made at the [emergency room] with the responding officer and where she's able to give at least some detail about what happened and this would fall under the excited utterance exception to the hearsay rule[." Defendant] responded this is not an exited utterance but is prompting by the police. Although this court did not necessarily agree [that] the statements are admissible under the "excited utterance" theory argued by the Commonwealth, the court decided to permit the testimony with limitations.
>
> Officer Pascale testified [that D.B.] said [that] she took her break with another employee, Ant, and went to the rear of the Walmart and behind Forman Mills. When there, Ant made sexual advances on her and tried to vaginally penetrate her. When talking about it, [D.B.] became distraught and "shut down[,]" and [Officer Pascale] arranged for a formal interview the next day.
>
> The court permitted Officer Pas[c]ale to testify to [D.B.'s] statements: the statements were not being offered for the truth

of the matter asserted; they were offered to explain why Officer Pascale went to the hospital and what happened when he arrived. And[,] in fact, the record shows, [] at the time she was in the hospital[, D.B.] did not know [Defendant's] full name and could not identify him by name, and [D.B.] was so distraught she could not speak about the matter in any depth. Notwithstanding this conclusion, this court also considered the Commonwealth['s] argument [that] the statements could be considered [] excited utterance[s] under the exception to the hearsay rule: [D.B.] was suffering from a trauma and telling what had happened to her and in a stressful hospital situation, serving to continue her traumatic experience. This court properly admitted the testimony and this decision was not an error in judgment, and absolutely not a manifestly unreasonable judgment, and this court properly applied the law, and the record is void of an indicia [that] this court's decision was the result of partiality, prejudice, bias[,] or ill will.

Assum[ing *arguendo* that the] Superior Court disagrees and finds this court[] committed error, in view of all the corroborating testimony in this case, the error is harmless. [Defendant's] claim does not merit relief because, even if the testimony was hearsay, any error in the admission of the testimony was harmless because the error did not prejudice the defendant or the prejudice was *de minimis*, the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence, and the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. The victim testified concerning the sexual assault and she identified [Defendant]. Thus, even if the trial court erred in allowing Officer Pascale to testify regarding the identity of the perpetrator, any error was harmless.

Trial Court Opinion, 4/22/25, 46-49 (record citations omitted).

To the extent that the trial court advocates that D.B.'s out-of-court statement could have been presented for a purpose other than the truth, to explain the police officer's course of investigation, we agree that would have been permissible. ***See Commonwealth v. Fitzpatrick***, 255 A.3d 452, 458

(Pa. 2021) (if not offered for the truth of the matter asserted, an out-of-court statement is not hearsay, and can be admitted to demonstrate the non-truth purpose). If that had been the accepted limited purpose for presenting the out-of-court statements of D.B. through the police officer, then the testimony should have been accompanied by a limiting instruction to the jury. *Id.* at 479 ("In a jury trial, the evidence [of an out-of-court statement presented for a non-truth purpose] should be admitted in conjunction with a limiting jury instruction to ensure that the jury considers the evidence [for the limited purpose,] and not for the truth of the words spoken.").

Here, when the trial court denied Defendant's objections to the officer's testimony about D.B.'s statements to him at the hospital, no limiting instructions were offered to focus the juror's attention to the limited purpose for which the evidence could be used. *See* N.T. Trial, 5/7/24, 38, 41. In the absence of a limiting instruction, the statements were admitted as substantive evidence without limitation. To admit these statements as substantive evidence an applicable hearsay exception was required. *See Commonwealth v. King*, 959 A.2d 405, 412 (Pa. Super. 2008) ("since the jury was not instructed with respect to the manner in which such evidence of motive was to be regarded, the statement must be considered as substantive evidence admitted for the truth of the matter asserted, which clearly rendered it hearsay").

The only hearsay exception argued by the Commonwealth to apply before the trial court was the excited utterance exception. *See* N.T. Trial,

5/7/24, 39-40.    The Commonwealth argued that the exception applied because D.B. was "visibly distraught" at the time of her interaction with the officer at the hospital and, in the Commonwealth's view, the statements would still be excited utterances because they were relayed at a time when D.B. was still experiencing trauma from the sexual assault incident: "If you go through something traumatic, it can be more than just right away.  It's how long you are under the strain of that trauma for." ***Id.***

The excited utterance exception applies to "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Pa.R.E. 803(2).  With respect to the applicability of this exception, the comment to Rule 803(2) provides:

> There is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rule as an excited utterance.    In ***Commonwealth v. Gore***, 396 A.2d 1302, 1305 (Pa. Super. 1978), the court explained:
>
> > The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed term limit … Rather, each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." … The crucial question, regardless of time lapse is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

Pa.R.E. 803(2), *Comment*.  "Additionally, in assessing a statement offered as an excited utterance, the court must consider, among other things whether

the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so." *Commonwealth v. Gray*, 867 A.2d 560, 570 (Pa. Super. 2005) (internal quotation marks, brackets, and citation omitted). "It is the spontaneity of … an excited utterance [that] is the source of reliability and the touchstone of admissibility." *Id.* at 571 (citation omitted; brackets in original).

A police incident report, that was moved into the trial record, *see* N.T. Trial, 5/7/24, 51, indicated that Officer Pascale responded to Taylor Hospital at 4:56 p.m. on June 24, 2021. *See* Commonwealth Exhibit C-19, Police Incident Report, 4. Assuming that D.B. spoke to the officer shortly after that time, D.B.'s statement to Officer Pascale occurred about sixty hours after the assault, which D.B. testified happened around 5:00 a.m. on June 22, 2024. *See* N.T. Trial, 5/7/24, 73-74. Before D.B. spoke to Officer Pascale, she finished out her work shift on the morning of the 22nd, went home, had a phone conversation with a "mentor" that she had been "working with at the time," and spoke with her mother "a couple days later," before they "ended up going to the hospital." *See id.* at 79-81, 83. Officer Pascale testified that D.B. "became distraught" after he had a conversation with her and her mother during which D.B. "relayed[] that a sexual assault had occurred while she was working at the Walmart." *Id.* at 37-38. He also testified that D.B. "kind of froze up" and "began to tear up" when he questioned her further. *Id.* at 38.

The statement to the police officer, while not lengthy, constituted a narrative:

> She relayed that she works at the Walmart overnight from 10 [p.m.] to 7:00 [a.m.] I believe, around 5:00 [a.m., s]he took her break with another employee [who] she knew by the nickname[,] Ant. [T]hey went to the rear of the Walmart and then … behind the Foreman Mills. She said that's when Ant began to make sexual advances on her to the point that he attempted to vaginally penetrate her. And that's when she became distraught and shut down.

N.T. Trial, 5/7/24, 41.

A narrative of this nature could have been admissible as the product of emotional trauma if it had been made closer in time to the incident in question. *See, e.g.*, *Commonwealth v. Pettiford*, 402 A.2d 532, 533 (Pa. Super. 1979) (victim statement properly admitted as excited utterance where "the victim was subjected to the emotional trauma of a forcible rape and was in a hysterical state of mind when, within fifteen to twenty minutes of the rape, she recounted its details to the witnesses in question"). The passage of a substantial amount of time in between the statement and incident in this case, however, particularly where combined with the fact that D.B. was able to speak to others and have time to reflect on the events in question before making the statement, and that the statement was made in a separate location from the incident and seemingly in response to police questioning compel us to include that the statement to the police officer was not an excited utterance for admissibility purposes. *See Commonwealth v. Keys*, 814 A.2d 1256, 1259 (Pa. Super. 2003) (terroristic threats victim's statement to police

did not qualify as excited utterance where, *inter alia*, thirty minutes elapsed between the end of the startling event and the statement, the statement was elicited eight blocks away from the scene of the event, and the utterance was in response to a police officer's query).

Moreover, the fact that the victim was able to continue on with her work shift at her place of employment after the incident occurred suggested that, at the time of the police statement, more than two days later, D.B. was not making spontaneous reactions to a startling event that continued to render her reflective thought processes inoperable such that the statement would be admissible as an excited utterance. *See Commonwealth v. Upshur*, 764 A.2d 69, 75 (Pa. Super. 2000) (*en banc*) ("Admissibility pursuant to th[e excited utterance] exception, requires, initially, that the declarant observe an event sufficiently startling and so near in time as to render his reflective thought process inoperable and, secondly, that the declaration constitute a spontaneous reaction to the startling event.") (citation omitted).

While we agree with Defendant that D.B.'s statement to the police officer should not have been admitted under the excited utterance exception, we are unable to conclude that Defendant was prejudiced by the admission of the statement where it was merely cumulative of D.B.'s properly admitted, untainted, and substantially similar testimony to the jury. The statement to Officer Pascale identified a coworker, "Ant," as having made a sexual advance on D.B., which included an attempt to vaginally penetrate her, during a break at her work at the time of the work break incident addressed in D.B.'s

testimony. *See* N.T. Trial, 5/7/24, 41 (statement recounted by Officer Pascale), *compare with* N.T. Trial, 5/7/24, 63-75 (D.B. testifying about work break incident involving Defendant, whom she referred to as "Ant," in which she alleged that he, *inter alia*, "proceeded to insert his penis into [her] vagina"). Given that Officer's Pascale's testimony as to D.B.'s statement to him was cumulative of D.B.'s own testimony, we conclude that the admission of the hearsay from the officer constituted harmless error. *See Commonwealth v. Wilson*, 286 A.3d 1288, 1301 (Pa. Super. 2022) (error in admitting entire recording of a forensic interview of a child rape victim was harmless where the contents of the forensic interview were cumulative and "substantially similar" to the child victim's testimony).

With respect to Defendant's claim about the admission of hearsay statements from D.B. contained in the testimony of her mother, the trial court advises as follows:

> The record shows [that Defendant] made a hearsay objection to [D.B.'s mother] testifying concerning the statements [D.B.] made to her about the sexual assault. This court determined [that D.B.] could continue testifying subject to cross examination about her testimony. A review of the record demonstrates the only statement [D.B.'s mother] made concerning the sexual assault was "that a guy from her job had raped her" and the remainder of her testimony involved what the next steps [D.B.] would be taking; [D.B.'s mother] did not testify to any specific identification. Additionally, the record shows [Defendant,] during cross examination[,] did not ask any questions concerning [D.B.'s] statements. Finally[,] the statements were not offered to prove the truth of the matter asserted but to show [that D.B.'s] testimony was consistent and the reason she decided to have an examination, and the statements were not hearsay. This court in reviewing the record determined [that Defendant's] objections

> effectively steered the testimony of [D.B.'s mother] away from [D.B.'s] statements.
>
> [Moreover], even if the testimony was hearsay, any error in the admission of the testimony was harmless. Here, as noted above, prior to [D.B.'s mother's] testimony, the victim testified without objection concerning the sexual assault. Thus[, D.B.'s mother's] testimony regarding [Defendant's] identity was wholly cumulative of both witnesses' prior testimony. Thus[,] even if the trial court erred in allowing [D.B.'s mother] to testify regarding her daughter['s] report of the sexual assault and identification of [Defendant], if any, the error was harmless.

Trial Court Opinion, 4/22/25, 49-50 (record and case law citations omitted).

D.B.'s mother's testimony made clear that D.B. woke her up to tell her about the assault and that she and her daughter then went to the hospital. *See* N.T. Trial, 5/7/24, 153 ("she came to my room and she woke me up to tell me what happened to her"), 159 ("We cried and the first thing we did was go to the hospital."). From this testimony we can infer that the D.B.'s disclosure statements to her mother occurred on the morning or day of June 24, 2021, more than two days after the incident on June 22, 2021. Her mother described D.B. as "crying" and "distraught" at the time of the disclosures but otherwise described her as "really, really quiet" in the days leading up to the disclosure. *See id.* at 153, 158-59.

From the circumstances we glean from the mother's testimony about the disclosures from D.B., we find that many of the factors that prevented us from applying the excited utterance hearsay exception to the statements made to Officer Pascale apply equally to the statements to the mother. Here, a span of two days or more between the incident and the disclosure to the

mother made it unlikely that D.B. was undergoing a persistent state of excitement for that entire time period such that D.B.'s thought processes were inoperable at the time she spoke to her mother. While we have provided that the excited utterance exception may apply to disclosure of child victims to a mother made after the passage of time when the disclosures were made at the first opportunity to do so, *see Commonwealth v. Sherwood*, 982 A.2d 483, 496 (Pa. 2009), in this instance, D.B. was an adult at the time of the relevant events, and the mother's testimony did not assert that D.B. made the disclosure to her mother at the first opportunity to do so. Given the two-day delay in the disclosure to the mother, the changed setting from the work site to her home, and D.B.'s change from being quiet in the days leading to the disclosure to being distraught at the time of the disclosure – thus evincing adequate time for reflection by D.B. – we must agree with Defendant that the trial court erred by rejecting his objection to the admission of the mother's testimony based on the excited utterance exception. *See* N.T. Trial, 5/7/24, 154-58.

As with Defendant's claims about the presentation of hearsay through Officer Pascale and the SANE packet, we agree with the trial court that the admission of hearsay through D.B.'s mother's testimony amounted to nothing more than harmless error where the substance of the testimony was cumulative of D.B.'s own testimony. The mother's testimony repeated a statement from D.B. that "a guy on her job had raped her." N.T. Trial, 5/7/24, 154. D.B.'s testimony maintained that, with respect to the incident at issue,

a co-worker had tried to insert his penis in her vagina and penetrated her anally after she told him that she did not consent. *See* N.T. 5/7/24, 74-77 ("I told him I don't do that, that's not my thing. … I wasn't okay with what he was doing. … I told him multiple times that I wasn't comfortable with anything. … I wasn't comfortable with anything he did[,] and I told him that it wasn't my thing multiple times."). Rape, by its statutory definition, refers to a person engaging in sexual intercourse by, *inter alia*, forcible compulsion, *see* 18 Pa.C.S. § 3121(a)(1), and, by statute, we define "sexual intercourse" as including, "[i]n addition to its ordinary meaning[,] intercourse per os or per anus, with penetration however slight." 18 Pa.C.S. § 3101. Even though Appellant never achieved penetration of D.B.'s vagina for purposes of the rape charge, the "rape" allegation repeated by D.B.'s mother applied equally to the anal penetration addressed in D.B.'s testimony and provided the factual basis for the IDSI charge. Because the hearsay statement repeated by D.B.'s mother was cumulative of D.B.'s own untainted testimony, we agree with the trial court that the admission of the mother's testimony about her daughter's statement was simply harmless error. *See Wilson*, *supra*, 286 A.3d at 1301.

We therefore find that Defendant's claims identify three errors by the trial court but, with respect to each, the errors were harmless because the improperly admitted evidence merely repeated the exact substance of D.B.'s substantially similar testimony which the jury heard and evaluated in their role as the trial fact finder.

To the extent that Defendant summarily asserts that the cumulative effect of these errors was not harmless, *see* Defendant's Brief for Appellant, 32 ("Each of the hearsay rules, separately and combined, improperly bolstered the complainant's testimony. … Even if 'wholly cumulative' as the trial court suggests, that only amplifies the prejudice and further illustrates why a new trial is required.") (citation omitted), we find that this baldly-stated argument is unavailing. Assuming *arguendo* that Defendant had properly developed a cumulative prejudice claim beyond the two-sentence assertion presented, he would not have been able to show that the erroneously repeated statements of D.B. prejudiced him. This case did not simply come down to an assessment of D.B.'s credibility such that the efforts to repeat her account would have reasonably affected the outcome of the trial. Instead, D.B.'s account was bolstered by the text messages in which, following the assault incident, Defendant apologized to D.B., asserted, "That was my fault," referenced that he did not want to "make" her do something, and expressed that he felt that he "may have missed [his] opportunity" after addressing his desire to have sex with D.B. N.T. Trial, 5/7/24, 125-26; *see also* Commonwealth Trial Exhibit C-13 (text messages). The reasonable inferences to be gleaned from the content and timing of Defendant's text messages were that Defendant did something he needed to apologize for around the time of the work break during which the assault occurred, that the improper thing he needed to apologize for involved him trying to make D.B. do something that she did not want to do, and that the apology involved something sexual in nature. These

text messages offered substantial corroboration for D.B.'s account and bolstered her credibility independent of the summary restatements of her accounts to the nurse, her mother, and the responding police officer. Accordingly, we conclude that a cumulative prejudice argument would fail for lack of merit.

## Appeal Number 78 EDA 2025

In its appeal, the Commonwealth presents the following question for our review:

> Whether the trial [court] abused its discretion when sentencing [D]efendant where the court grossly deviated downward from the mitigated range of the [S]entencing [G]uidelines, failed to account for sentencing factors in 42 Pa.C.S. §[ ]9721, improperly considered the lifetime sexual offender registration requirement as a factor necessitating a more lenient sentence, improperly considered probation – which for [D]efendant's conviction is mandatory – as a factor necessitating a more lenient sentence, improperly viewed [D]efendant's prior relationship with his sexual assault victim as a mitigating factor, and where it considered as a factor that [D]efendant did not understand the victim's lack of consent, despite the jury's determination that [D]efendant knowingly, or at least recklessly, disregarded the victim's non-consent?

Commonwealth's Brief for Appellant, 3.

The Commonwealth presents a challenge to the discretionary aspects of the sentence imposed, alleging that the sentencing court "grossly deviated downward" from the mitigated range recommended by the Sentencing Guidelines and imposed an unreasonable sentence due to multiple improper mitigation factors. *See* Commonwealth's Brief for Appellant, 12-22. The Commonwealth argues that it was improper for the court to consider as

mitigating that: (1) Defendant had "a lack of criminal history" where that was already factored into the Sentencing Guidelines' recommendation, *see id.* at 16; (2) Defendant had an "excellent work history" where his crimes in this case were committed against a co-worker, *see id.* at 16-17; (3) a lesser imprisonment term would be justified based on the requirement for imposing a statutorily-mandated minimum term of probation in this case, *see id.* at 17-18; (4) Defendant previously knew D.B. and that he had some sort of prior relationship with her, *see id.* at 18-19; (5) contrary to the jury's verdict, Defendant did not realize or understand D.B.'s lack of consent, *see id.* at 19-20, 22; and (6) "a lifetime Sex[ual] Offender Registration [requirement] was essentially punishment enough and justified the excessively lenient sentence," *see id.* at 21. The Commonwealth asserts that the imposed sentence was "unjustifiable, unreasonable[,] and tantamount to an abuse of discretion." *Id.* at 22.

"It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa. Super. 2018)

(citation omitted).

Pennsylvania Rule of Criminal Procedure 721 governs a Commonwealth's challenge to a defendant's sentence, in pertinent part, as follows:

**(A) Commonwealth Challenges to Sentence**

(1) The Commonwealth may challenge a sentence by filing a motion to modify sentence, by filing an appeal on a preserved issue, or by filing a motion to modify sentence followed by an appeal.

(2) Sentencing issues raised by the Commonwealth at the sentencing proceeding shall be deemed preserved for appeal whether or not the Commonwealth elects to file a motion to modify sentence on those issues.

Pa.R.Crim.P. 721(A).

The Commonwealth timely filed a notice of appeal within thirty days of the trial court's order dismissing both parties' post-sentence motions. ***See*** Order (post-sentence motions denial), 11/7/24, 1; Commonwealth's Notice of Appeal, 12/6/24, 1; ***see also*** Pa.R.Crim.P. 721(B)(2)(i) (setting a thirty-day deadline for a Commonwealth notice of appeal following an order disposing of post-sentence motions filed by the Commonwealth and the defendant). It also preserved its arguments for reconsideration of sentence in its post-sentence motion, its memorandum of law in support of its post-sentence motion, and its arguments before the sentencing court. ***See*** Commonwealth's Post-Sentence Motion, 8/15/24, ¶¶ 7-22; Commonwealth's Memorandum of

Law, 9/27/24, 16-28; N.T. Post-Sentence Motion Hearing, 8/29/24, 9. The Commonwealth also included a separate Rule 2119(f) statement in its brief. **See** Commonwealth's Brief for Appellant, 10-11. Our review now turns to the Rule 2119(f) statement to determine whether the Commonwealth raised a substantial question.

"This Court has found a substantial question exists when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code[;] or (2) contrary to the fundamental norms which underlie the sentencing process." **See Commonwealth v. Garcia-Rivera**, 983 A.2d 777, 779-80 (Pa. Super. 2009) (citation and internal quotation marks omitted). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Edwards**, 71 A.3d 323, 330 (Pa. Super. 2013) (citation omitted). In its Rule 2119(f) statement, the Commonwealth asserts both that the court imposed an unreasonable sentence, reflecting a downward departure from the recommendations of our Sentencing Guidelines that was "unsupported by the circumstances," and did so by relying "upon impermissible sentencing factors." Commonwealth's Brief for Appellant, 11. We conclude that the Commonwealth raises a substantial question permitting our review. **See Commonwealth v. Baker**, 311 A.3d 12, 18 (Pa. Super. 2024) (Commonwealth raised substantial question by arguing that sentencing court abused its discretion "by imposing a sentence below the mitigated range of the sentencing guidelines resulting in an

unreasonably lenient sentence"); **Commonwealth v. Childs**, 664 A.2d 994, 996 (Pa. Super. 1995) (Commonwealth presented substantial question when it contended sentence imposed was "excessively lenient and unreasonably deviated from applicable guideline range"). Accordingly, we grant the Commonwealth allowance of appeal and will review the discretionary aspects of Defendant's sentence.

Our standard of review of a challenge to the discretionary aspects of a sentence is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

**Baker**, 311 A.3d at 19 (citation omitted). Further, we have noted:

> In reviewing a record to determine if the sentencing court abused its discretion, the Sentencing Code instructs this Court to consider the nature and circumstances of the crime; the history and characteristics of the defendant; the sentencing court's findings as well as the court's opportunity to observe the defendant, including through presentence investigation; and the sentencing guidelines. **See** 42 Pa.C.S.[] § 9781(d).

> The Sentencing Code also instructs sentencing courts to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.[] § 9721(b). The balancing of these Section 9721(b) sentencing factors is within the sole province of the sentencing court. **See Commonwealth v. Lekka**, 210 A.3d 343, 353 (Pa. Super. 2019).

> The sentencing court must also consider the sentencing guidelines when sentencing a defendant. **See** 42 Pa.C.S.[] 9721(b). However, the sentencing guidelines are purely advisory in nature – they are not mandatory. **See Commonwealth v. Yuhasz**, [] 923 A.2d 1111, 1118 ([Pa.] 2007). A court may therefore use its discretion and sentence defendants outside the guidelines, as long as the sentence does not exceed the maximum sentence allowed by statute. **See id.** at 1118-1119. When a court deviates from the sentencing guidelines, it must state the reasons for doing so on the record. **See Commonwealth v. McLaine**, 150 A.3d 70, 76 (Pa. Super. 2016). This Court may vacate a sentence if it finds the "sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.[] § 9781(c)(3).
>
> Further, the weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's exclusive domain. **See Commonwealth v. Chilquist**, [] 548 A.2d 272, 274 ([Pa. Super.] 1988). This Court has stated that when a court possesses a [presentence investigation report ("PSI")], it is presumed the court "was aware of and weighed all relevant information contained [in the report] along with any mitigating sentencing factors." **Commonwealth v. Marts**, 889 A.2d 608, 615 (Pa. Super. 2005) (citation omitted).

**Baker**, 311 A.3d at 19.

As a preliminary matter, we note that the Commonwealth is correct that the sentencing court imposed a sentencing scheme that constituted a substantial downward deviation from the Sentencing Guidelines' recommendations. The court imposed concurrent terms of one to two years' imprisonment and five years' probation for IDSI and sexual assault where the guidelines' recommended minimum imprisonment terms for those convictions were 48 to 66 months' imprisonment, plus or minus twelve months imprisonment for aggravating or mitigating circumstances, for IDSI, and 36 to 54 months' imprisonment, plus or minus twelve months of imprisonment

for aggravating or mitigating circumstances, for sexual assault. ***See supra***

note 2.

Prior to the imposition of the sentence, the Commonwealth informed the

trial court of the applicable guideline recommendation for the lead offense,

***see*** N.T. Sentencing Hearing, 8/8/24, 19, and the court acknowledged that it

had reviewed, *inter alia*, the parties' sentencing memoranda and a PSI. ***See***

***id.*** at 28. The court prefaced its imposition of sentence with the following

remarks, reflecting that it was designating a mitigating term that would "go

outside the sentencing guidelines," as follows:

> THE COURT: … I think it is important to note that during the pendency of this case back in 2021 to today, there's been no additional criminal involvement or history. It's important to note that he's never had any criminal involvement, correct?
>
> [DEFENSE COUNSEL]: That's correct.
>
> THE COURT: I also consider the testimony of the victim[,] and I found her to be compelling, honest, and truthful, and I don't think she embellished at all. She didn't embellish. I thought that she was trying to be as sincere as possible. That being the case, I think she indicated that they had -- it's an unusual case of this nature because they had a relationship and she was, I guess a way of paraphrasing it. She was interested in, in exploring a relationship, although she was somewhat conflicted about the relationship. I think that was kind of the way to put it. She was conflicted about a relationship with him, given that she had a relationship with another person. And I think that's what she testified to. I think that was a cross examination. You actually asked her who the person was, the person's name. She was certainly conflicted about that. It's obvious that they were taking breaks together, smoking marijuana together on their breaks, having some forms of contact, kissing, making out, however you want to phrase it, touching each other. But she also made it clear that she drew the line at a certain point that that was the line. She wasn't opposed to satisfying him in her testimony, but she

was opposed to going over a certain line that she had drawn. She
made that pretty clear.

That being said, I'm not sure [Defendant] understood that line. I
mean, she's willing to satisfy him, but not let him satisfy her, I
guess is a way of looking at it. And she wouldn't have been into
that as her words. She wasn't into that, I think is the term she
used. So[,] it creates [an] unusual and difficult case for
sentencing[ i]n my opinion. I don't think the guidelines anticipate
this nature of the case, this nature of an IDSI, I don't think they
anticipate, the sentencing commission doesn't look at all the facts.
So[,] that's why they give courts discretion. I don't think they're
totally aware or they recognize that they're not aware of every
possible consequence or every possible scenario. And I think they
have to give the Court's discretion so they can adjust the
sentencing for the unusual, the bizarre, the difficult, the less than
normal case.

I think in [Defendant's] favor is the fact that he has a great
working history. He's always seemed to have had a job as far as
I could tell, right? I mean, [he's] never not worked. He has a
great relationship with his family, his sister[s], his mother, et
cetera. But there's no doubt that the jury found that he crossed
the line as we know it to be that the victim made the jury
understand that she did have very distinct and clear lines as to
where she wanted that relationship to go. And although they were
friends and if you saw the video, it didn't look like she was
particularly upset after the event as they were walking back into
the Walmart. But that's not the indicator, that's not controlling,
in my mind, that's not the jury's decision is what's controlling in
my mind.

All those things being said, I think it's a deserving, this case is
deserving of mitigation. I can't go to the level of mitigation that
the Defense would like me to. I can go outside of the sentencing
guidelines. I will go outside of the sentencing guidelines for this
case. I believe that this is a case where certain considerations are
necessary and warranted.

*Id.* at 29-32 (section breaks added).

At the hearing on the post-sentence motions, the court noted additional

factors for mitigation. The court suggested that the mandatory SORNA

registration and reporting requirements were a mitigating factor: "You don't think lifetime registration should be considered in that sentence? … A lifetime registration. He gets the sentence plus lifetime registration as a sex offender." *See* N.T. Post-Sentence Motions Hearing, 8/29/24, 5; *see also id.* at 10 ("And he has to be followed for the rest of his life he has to be followed by someone because he is a lifetime registrant"). On top of the mandatory sex offender registration and reporting requirements, the court suggested that the statutorily-mandated minimum requirement of at least three years' probation was also another consideration for mitigation. *See id.* at 8 ("I think … a state sentence with a long probationary tail and lifetime registration is a serious sentence."); *id.* at 9 ("the guidelines do not anticipate a lifetime registration or five years of probation on top of that").

Upon review of the Commonwealth's claim that improper sentencing factors were relied upon, we find that some of its arguments are not supported by the record or supporting law. While the Commonwealth alleges that the sentencing court improperly counted Defendant's prior record score of zero and a lack of a prior criminal record as a mitigating factor, *see* Commonwealth's Brief for Appellant, 16, the notes of testimony from sentencing reveal that the trial court instead considered as a mitigating factor Defendant's lack of "additional criminal involvement or history" since "the pendency of this case." N.T. Sentencing Hearing, 8/8/24, 29. By the terms of the applicable version of the Sentencing Guidelines, the prior record score would have only accounted for prior convictions for which a sentence had been

already imposed. *See* 204 Pa. Code § 303.5(c) (7th ed., amend. 6). The guidelines thus would not have factored in new criminal cases for which sentences had not been imposed or criminal cases remaining pending at the time of sentencing. In these circumstances, we find that the court properly considered the fact that Defendant remained crime-free for the entire four-year duration of the pendency of his criminal proceedings in the instant case, independent of the fact that Defendant had a prior record score of zero. Although this is a subtle distinction, we find that the court's remarks did not improperly double-count Defendant's prior record.

Additionally, we are not persuaded that the Commonwealth's argument that the court's reflection on Appellant's "excellent work history" demonstrated consideration of an improper sentencing factor. *See* Commonwealth's Brief for Appellant, 16-17. While, on its face, it would appear to be awkward to consider a defendant's work history as a mitigating sentencing factor in a case in which a co-worker was Defendant's victim of sexual offenses, the precise facts of the instant case did not conflict with the sentencing court considering in *toto* Defendant's work history preceding and following the commission of his crimes. While this Court may not place the same weight on the factor as the sentencing court did, the Commonwealth points us to no law suggesting that work history would be an impermissible mitigation factor in a case involving crimes committed against a co-worker, and we cannot conclude that the circumstances of the instant case render *per se* Defendant's lifelong work history immaterial for mitigation purposes.

We agree with the Commonwealth, however, that the court's consideration of statutorily-mandated sex offender registration and reporting requirements and a statutory-mandated minimum amount of consecutive probation were not proper factors for mitigation. **See** Commonwealth's Brief for Appellant, 17-18, 21. With respect to the registration and reporting requirements, we have previously held that "[n]otice to the public of [a defendant's] sexually violent predator designation does not diminish the court's discretion to conclude that significant incarceration is required to accomplish the legitimate objectives of the sentencing process." **See Commonwealth v. Lilley**, 978 A.2d 995, 999 (Pa. Super. 2009). Accordingly, we held that a sentencing court did not abuse its discretion in concluding that a defendant's lifetime registration requirement was not a mitigating circumstance for sentencing purposes. **See id.** Consistent with **Lilley**, we conclude that the registration and reporting requirements are not an offsetting mitigating consideration for imposing a lesser term of imprisonment.[6]

We also agree with the Commonwealth that being subject to at least three years of probation under 42 Pa.C.S. § 9718.5 is not a proper factor for mitigation. By the terms of Section 9718.5, a sentencing court may impose

_____

[6] We note that the holding in **Lilley** is also consistent with our Supreme Court's recent holding that the notification and registration requirements under Section H of SORNA are not punitive in nature. **See Commonwealth v. Torsilieri**, 316 A.3d 77, 109-10 (Pa. 2024).

the minimum term of probation required by that statute "in addition to the maximum sentence permitted for the offense for which the defendant was convicted." 42 Pa.C.S. § 9718.5(b). Moreover, the statute states that "[n]othing under this section shall limit the court's authority to direct supervision by the Department of Corrections by special order as provided under 61 Pa.C.S. § 6217(a) (relating to probation services)." However, here, the court imposed a longer term of consecutive probation than required by the statute. That the sentencing court imposed a longer term of probation than required is a proper consideration for the court in determining the length of an imprisonment term. We find that under these precise circumstances, the court did not improperly consider the exercise of its discretion to increase the consecutive probation term as a factor weighing toward mitigating the imprisonment term.

The Commonwealth also argues that the trial court considered, as mitigating factors, that Defendant and D.B. had a "prior relationship" and that the court perceived a misunderstanding on Defendant's part concerning D.B.'s lack of consent. *See* Commonwealth's Brief for Appellant, 18-20; *see also* Trial Court Opinion, 4/22/25, 39 ("This court did not err or abuse [its] discretion by … improperly viewing defendant's prior relationship with his sexual assault victim as a mitigating factor, or … nullifying the jury's factual finding where it considered as a factor that defendant did not understand [the] victim's lack of consent"). As to the former factor, the Commonwealth alleges that "[i]t is improper, antiquated, and inappropriate to view acquaintance rape

as somehow less deserving of punishment than a stranger rape." Commonwealth's Brief for Appellant, 18. It also adds that, "[t]o rationalize that defendant is somehow more deserving of a lenient sentence because he chose to rape and assault someone who had trusted and befriended him, versus a total stranger, is indefensible." *Id.* at 19.

While we are sympathetic to the Commonwealth's argument that no version of rape should be minimized from a sentencing perspective, the Commonwealth fails to point us to any supporting law suggesting that it was an abuse of discretion for the sentencing court to consider the established facts of an offense in considering whether to mitigate or aggravate a term of imprisonment. Unlike the Commonwealth, we do not believe that the sentencing court intended to make a blanket determination that acquaintance sexual assault was categorically less offensive than a sexual assault committed by a stranger. Rather, because of the existence of a prior relationship between Defendant and his victim, there were necessarily more factors to consider, such as the record of Defendant's remorse established in the text messages entered into the record.

We are mindful that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa. Super. 1999) (*en banc*) (citation omitted). "In this context, an abuse of discretion is not shown merely by an error in judgment." *Id.* A sentencing court must consider the particular circumstances of the

offense, as well as the character of the defendant in crafting its sentence. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010)  We will not reweigh "the significance placed on each factor by the sentencing judge." *Commonwealth v. Williams*, 69 A.3d 735, 742 (Pa. Super. 2013) (citation omitted). When an offense is carried out in a manner which makes it more egregious than what is considered "typical" for the offense, the nature of the offense may be treated as a proper aggravating factor. *See Commonwealth v. Hanson*, 856 A.2d 1254, 1259-60 (Pa. Super. 2004) (affirming aggravated range sentence for terroristic threats where Hanson's conviction "was more reprehensible than a 'typical' instance of terroristic threats").  Similarly, if an offense is carried out in a manner that makes it less egregious than the typical offense in the view of the sentencing court, mitigating the sentence is within the court's discretion.

In the last remaining subpart of this claim, the Commonwealth argues that the sentencing court's comprehension that Defendant made a mistake of fact as to the victim's consent was "completely contrary to the findings of fact made by the jury."  Commonwealth's Brief for Appellant, 19.  We agree with the Commonwealth that this demonstrates that the sentencing court considered an improper mitigating factor.  Pennsylvania law does not recognize mistake of fact as to consent as a defense to rape and IDSI. *See Commonwealth v. Williams*, 439 A.2d 765, 769 (Pa. Super. 1982) ("If the element of the defendant's belief as to the victim's state of mind is to be established as a defense to the crime of rape then it should be done by our

legislature which has the power to define crimes and offenses. We refuse to create such a defense."); *see also Commonwealth v. Fischer*, 721 A.2d 1111, 1118 (Pa. Super. 1998) ("It is clear … that the *Williams* court's basis for denying the jury instruction was its conclusion that the law did not require it and, further, that the judiciary had no authority to grant it"). Where the jury found Defendant guilty of indecent assault by lack of consent, the sentencing court's statement that Defendant misunderstood the lack of consent improperly invalidates the jury's verdict.

We conclude that the sentencing court imposed a sentence that deviated downward from the Sentencing Guidelines' recommendations and did so based on at least two improper factors for mitigation. Outside a limited, narrow category of cases in which a trial court impermissibly penalizes a defendant for exercising constitutional rights, however, the consideration of impermissible sentencing factors does not mandate vacatur by itself, but requires an additional finding that the imposed sentence was unreasonable for purposes of 42 Pa.C.S. § 9781(c)(3). *See Commonwealth v. Smith*, 673 A.2d 893, 896 (Pa. 1996); *see also Commonwealth v. Sheller*, 961 A.2d 187, 192 (Pa. Super. 2008) ("Even if a sentencing court relies on a factor that should not have been considered, there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines").

In deciding whether a sentencing court imposed an unreasonable sentence, we are guided by the considerations listed in 42 Pa.C.S. § 9781(d)

– that is, the nature and circumstances of the offense and the history and characteristics of the defendant; the opportunity of the sentencing court to observe the defendant, including any presentence investigation; the findings upon which the sentence was based; and the recommendations of the Sentencing Guidelines – and we review whether the trial court properly considered the sentencing factors outlined in 42 Pa.C.S. § 9721(b) – the protection of the public, the gravity of the offense with respect to the victim and the community, and the rehabilitative needs of the defendant. *See Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007); *Commonwealth v. Valez*, 273 A.3d 6, 12 (Pa. Super. 2022). "[T]he weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's exclusive domain." *Baker*, 311 A.3d at 19. Where, as here, the sentencing court had a PSI, "it is presumed the court was aware of and weighed all relevant information contained [in the report] along with any mitigating sentencing factors." *Id.* (internal quotation marks and citation omitted).

"While the Sentencing Code does not define unreasonableness, our Supreme Court has explained that the concept commonly connotes a decision that is irrational or not guided by sound judgment." *Commonwealth v. Velez*, 273 A.3d 6, 12 (Pa. Super. 2022) (citing *Walls*, 926 A.2d at 963) (internal quotation marks omitted). The imposed sentence reflected a substantial downward departure from the Sentencing Guidelines' recommendations, but we cannot say that the sentencing court abused its

discretion in imposing this sentence. Given the court's consideration of the PSI report, and its emphasis on its findings concerning Defendant's "great working history" and his "great relationship with his family," **see** N.T. Sentencing Hearing, 8/8/24, 31, the sentencing court relied on additional, proper factors for mitigation and clearly felt that the chosen sentence – while perhaps too low for members of this Court – was adequate to protect the public and suit Defendant's rehabilitative needs in light of the circumstances presented. As we have no reason to believe from the record that the sentence imposed was either irrational or not guided by sound judgment, we will not otherwise find an abuse of discretion under the totality of the circumstances. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes joins the memorandum.

Judge Beck files a concurring memorandum.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>6/23/2026</u>